**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TRACY CARROLL,**

                        **Plaintiff,**

  **vs.**                                                **1:14-CV-00479**
                                                             **(MAD/ATB)**

**THE STATE OF NEW YORK and the NYS**
**DEPARTMENT OF CORRECTIONAL SERVICES,**

                        **Defendants.**
_____

**APPEARANCES:**                                 **OF COUNSEL:**

**OFFICE OF DENNIS F. IRWIN**          **DENNIS F. IRWIN, ESQ.**
428 Sandy Creek Road
Albany, New York 12205
Attorney for Plaintiff

**OFFICE OF THE NEW YORK**           **ADRIENNE J. KERWIN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On April 25, 2014, Plaintiff commenced this action alleging that Defendants violated her rights under Title VII of the Civil Rights Act of 1964, specifically 42 U.S.C. § 2000e-5(e)(1). *See* Dkt. No. 1. On August 22, 2014, Plaintiff amended her complaint. *See* Dkt. No. 11.

      On November 11, 2014, the Court granted Defendants' motion to dismiss, finding that Plaintiff failed to allege any acts of discrimination within the 300-day statutory time period. *See* Dkt. No. 19 at 7-8. The Court also permitted Plaintiff one final opportunity to amended her complaint.

Currently before the Court is Defendants' motion for summary judgment.

## II. BACKGROUND

Plaintiff was employed by the New York State Department of Corrections and Community Supervision ("DOCCS") from November 2006 until April 2013. *See* Dkt. No. 48-1 at ¶ 1. In November 2006, Plaintiff began her employment with DOCCS at Mount McGregor Correctional Facility ("Mt. McGregor C.F."). *See id.* at ¶ 2. Plaintiff worked at Mt. McGregor C.F. until December 2010. *See id.* at ¶ 3. At Mt. McGregor C.F., Plaintiff worked as a transitional services coordinator and veterans coordinator. *See id.* at ¶ 4.

Mt. McGregor C.F. had a medium security portion and a minimum security portion: Plaintiff maintained offices in both locations. *See id.* at ¶ 5. During her time at Mt. McGregor C.F., Plaintiff's direct supervisor was senior correction counselor Jean Huff. *See id.* at ¶ 6. Plaintiff claims that, while employed at Mt. McGregor C.F., she faced harassment and discrimination directed at her by, among others, Sergeant John Michaels, Captain Murphy, Corrections Officer Kleinfeld, and Lieutenant Sheridan. *See id.* at ¶ 7.

In December of 2010, Plaintiff lost her job at Mt. McGregor C.F. as a result of a reduction in staff. *See id.* at ¶ 8. In January 2011, Plaintiff began work at Great Meadow Correctional Facility ("Great Meadow C.F."). *See* Dkt. No. 48-1 at ¶ 9. At Great Meadow C.F., Plaintiff was employed as a correction counselor and her direct supervisor was, at first, Robert Boissey, and thereafter Cheryl Goodman. *See id.* at ¶¶ 10-11. Plaintiff's next-ranking supervisor was Karen LaPolt, who was deputy superintendent of programs. *See id.* at ¶ 12. While employed at Great Meadow C.F., Plaintiff claims that she faced harassment and/or discrimination directed at her by, among others, Corrections Officers Scuderi, LaPointe, and possibly Dougherty, "Tony," and Kemp. *See id.* at ¶ 13.

At Great Meadow C.F., Plaintiff's regular schedule was Monday through Friday, 8:00 a.m. through 4:00 p.m. *See id.* at ¶ 14. Plaintiff did not work on Friday, April 13, 2012. *See id.* at ¶ 15. On Monday, April 16, 2012, Plaintiff worked for seven hours and thirty minutes, having used thirty minutes of vacation time on that day. *See id.* at ¶¶ 15-16. Plaintiff worked a full day on Tuesday, April 17, 2012 but was compensated using time allowed to her under the Family and Medical Leave Act for Wednesday, April 18, 2012. *See id.* at ¶¶ 17-18. The last day upon which Plaintiff reported to work at Great Meadow C.F. was April 17, 2012. *See id.* at ¶ 19.

On February 7, 2013, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). *See id.* at ¶ 21. On January 24, 2014, Plaintiff was issued a right-to-sue letter. *See id.*

## III. DISCUSSION

**A.     Summary Judgment Standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

3

242, 255 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.     Plaintiff's Response to Defendants' Motion for Summary Judgment**

As noted in Defendants' reply, Plaintiff's opposition to Defendants' motion for summary judgment mostly just regurgitates prior filings, including Plaintiff's second amended complaint, and is largely non-responsive to the arguments Defendants raised.  In her opposition, Plaintiff refers to the testimony of non-party witnesses Jean Huff, Belle Denise Perkins, and Virginia Donohue, as exhibits I, II, and III, respectively.  *See* Dkt. No. 58-10 at ¶¶ 9-11.  Plaintiff has filed nine fragments of deposition transcripts in conjunction with her affidavit in opposition.  *See* Dkt. Nos. 58-1–58-9.  Yet each is simply identified as "Transcript" and Plaintiff failed to attach to these filings the witness' oaths.  Moreover, the last two filings labeled "Transcript" do not have any identifying information that would aid in determining which witness is providing the testimony.  *See* Dkt. Nos. 58-8 & 58-9.  Moreover, Plaintiff provides no citation to any specific page(s) of these transcripts in her response.

**C.     Discrimination and Retaliation**

In her response to Defendants' motion for summary judgment, Plaintiff contends that she is "claiming that the many acts of discrimination and retaliation against me are part of the creation of the hostile work environment and sexual harassment against me, not that they stand alone as separate cause of action claims." Dkt. No. 58 at ¶ 13; *see also* Dkt. No. 59 at 8 ("Furthermore,

4

even if Plaintiff's claims of 'discrimination' and 'retaliation' do not stand alone as viable claims, they do stand to show and be part of the hostile work environment and sexually inappropriate conduct that were wrongfully created and acted out against the Plaintiff").  Since Plaintiff does not oppose Defendants' motion for summary judgment as to her claims of retaliation and discrimination, the Court grants summary judgment as to those claims.

**D.     Hostile Work Environment**

*1. Timeliness*

Prior to bringing a Title VII claim in a New York federal court, the aggrieved individual must file a complaint with the EEOC within 300 days of the events or occurrences giving rise to the claim of discrimination.  42 U.S.C. § 2000e-5(e)(1); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104–05 (2002); *Zerilli-Edelglass v. New York City Transit Authority*, 333 F.3d 74, 80 (2d Cir. 2003).  Consequently, those claims that fall outside of this 300-day time period are deemed time-barred and must be dismissed.  *See Morgan*, 536 U.S. at 109.  Furthermore, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Id.* at 113.  However, in a Title VII action alleging a hostile work environment, where at least one of the alleged acts of discrimination falls within the statutory period, the court may apply the continuing violation doctrine, wherein the court will find that those discrete claims that would ordinarily be time-barred are sufficiently related to an overall unlawful employment practice or policy and thus will be considered.  *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) ("To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in the furtherance of the ongoing policy occurred within the limitations period") (citing *Cornwell v. Robinson*, 23 F.3d 694, 703–04 (2d Cir. 1994)); *see also Lambert v. Genesee*

5

*Hospital*, 10 F.3d 46, 53 (2d Cir. 1993). Where the continuing violation doctrine applies, the court is permitted to consider "'the entire time period of hostile work environment . . . for the purposes of determining liability.'" *Patterson*, 375 F.3d at 220 (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). Where the claim that is brought is one alleging a hostile work environment resulting from sexual harassment, in order for the doctrine of continuing violation to apply, it must be shown that "while a harassing incident need not be overtly sex-based, there must be reason to believe that the act was motivated by the plaintiff's sex in order for the incident to contribute to a sexually hostile work environment." *Sanderson v. New York State Elec. & Gas Corp.*, 560 Fed. Appx. 88, 92 (2d Cir. 2014) (citing *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002)).

Courts in the Second Circuit generally disfavor the continuing violation doctrine and have declined to extend its applicability absent compelling circumstances. *See Cotz v. Matroeni*, 476 F. Supp. 2d 332, 356 (S.D.N.Y. 2007) ("Courts in the Second Circuit view continuing violation arguments with disfavor, and the doctrine's applicability outside of the Title VII or discrimination context is uncertain"); *Trinidad v. New York City Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) ("As a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances"). "Such compelling circumstances include 'unlawful conduct tak[ing] place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is an express, openly espoused policy that is alleged to be discriminatory; or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness.'" *Clemmons v. Holder*, No. 13-cv-7229, 2015 WL 4894184, *5 (E.D.N.Y. Aug. 17, 2015) (quoting *Koehl v. Greene*, No. 06–cv–0478, 2007 WL 2846905, *7-*9 (N.D.N.Y. Sept. 26, 2007)) (other citation

6

omitted); *see also Yip v. Bd. Of Tr. of SUNY*, No. 03–CV–0959, 2004 WL 2202594, *4 (W.D.N.Y. Sept. 29, 2004).

In the present matter, Plaintiff was employed by DOCCS until April 2013, but she last reported to her place of employment on April 17, 2012. *See* Dkt. No. 48-1 at ¶¶ 1, 19. Plaintiff filed her complaint with the EEOC on February 7, 2013. As such, the 300-day statutory period for actionable claims allows for claims based on incidents having occurred between April 13, 2012 and February 7, 2013. Since Plaintiff left DOCCS' employment, however, the actionable period in this case is from April 13, 2012 through April 18, 2012. As set forth in Defendants' motion, Plaintiff only reported to work at Great Meadow C.F. on April 16 and 17, 2012. *See id.* at ¶¶ 16-17.

First, the Court finds the continuing violation doctrine is inapplicable to Plaintiff's hostile work environment claim relating to her time at Mt. McGregor C.F. Courts have consistently held that when alleged discriminatory act are committed by different coworkers, in different departments, during different time periods, the doctrine is inapplicable. *See Little v. NBC*, 210 F. Supp. 2d 330, 368 (S.D.N.Y. 2002); *Hill v. Taconic Developmental Disabilities Servs. Office*, 181 F. Supp. 2d 303, 318 (S.D.N.Y. 2002). While at Mt. McGregor C.F., Plaintiff alleges that she encountered difficulties with Sergeant John Michaels, Captain Murphy, C.O. Kleinfeld, and Lieutenant Sheridan. *See* Dkt. No. 48-1 at ¶ 7. Plaintiff did not work with any of these individuals at Great Meadow C.F., the two facilities are not located on the same property, and Plaintiff had different supervisors at each facility. *See id.* at ¶¶ 11-13. As such, Plaintiff's claims relating to her time at Mt. McGregor C.F. are untimely.

As to the allegations relating to Plaintiff's time at Great Meadow C.F., the Court finds that Plaintiff has failed to set forth any compelling circumstances to otherwise merit the application of

7

the continuing violation doctrine, and the Court declines to do so. At her deposition, Plaintiff testified that she first consulted with an attorney about her workplace issues in 2009 or 2010. *See* Dkt. No. 48-4 at 86, 180. She again consulted with one or more attorneys almost immediately upon leaving DOCCS employment in April or May 2012. *See id.* at 182. Plaintiff presents no compelling reason why the Court should apply the continuing violation doctrine to the present matter.

Additionally, as discussed in more detail below, Plaintiff fails to provide the Court with any evidence of a relationship between the alleged hostile acts that fall without the statute of limitations and those that fall within it. None of the conduct occurring between April 13 and April 18, 2012 relate to a specific discriminatory policy or mechanism, or to continued unremedied wrongs amounting to a discriminatory policy or practice. *See Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994).

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's hostile work environment claim as to the incidents that occurred prior to April 13, 2012.

**D.     Hostile Work Environment**

Title VII makes it "'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e–2(a)(1)). "[T]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent '"to strike at the entire spectrum of disparate treatment of men and women"' in employment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (quoting *L.A. Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 n.13 (1978)). In order to demonstrate a hostile work environment based on gender,

8

a plaintiff must establish: "(1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Harris*, 510 U.S. at 21 ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive — is beyond Title VII's purview"); *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117-18 (2d Cir. 2010).

The inquiry has objective and subjective elements: "'the misconduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment," and the victim must also subjectively perceive that environment to be abusive.'" *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quoting *Alfano*, 294 F.3d at 374). Factors such as frequency of the discriminatory conduct, its severity, and whether it humiliates or physically threatens an employee or unreasonably interferes with an employee's work performance are used to determine whether an environment is sufficiently hostile. *Id.* (citing *Harris*, 510 U.S. at 23). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano*, 294 F.3d at 374 (quoting *Perry*, 115 F.3d at 149). "Finally, it is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Id.* (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

"In assessing the 'totality of the circumstances' offered to prove a hostile work environment, a fact-finder may consider only abusive conduct proven to be 'based on sex.'" *Pucino*, 618 F.3d at 117 (quotation and other citation omitted). "This may be proven by

9

'harass[ment] in such sex-specific and derogatory terms . . . [as] to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace,' . . . or by offering 'some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory.'" *Id.* at 117-18 (internal quotations omitted). "A plaintiff may rely on incidents of sex-based abuse to show that other ostensibly sex-neutral conduct was, in fact, sex-based." *Id.* at 118 (citation omitted); *see also Howley v. Town of Stratford*, 217 F.3d 141, 156 (2d Cir. 2000) (holding that a rational jury could infer that facially-neutral abuse was sex-based because the perpetrator had previously made several sexually-derogatory statements).

Following the issuance of the Court's November 11, 2014 Memorandum-Decision and Order, Plaintiff amended her complaint to include incidents that occurred between April 13 and 18, 2012. For example, Plaintiff claims that on April 12 and 13, 2012, she exchanged emails with her union representative regarding an upcoming grievance meeting that related to a sexual harassment grievance that she had filed on April 7, 2011. *See* Dkt. No. 20 at ¶ 14(ff). This upset Plaintiff because she believed that the meeting "meant to me that DOCS was not taking my sexual harassment or hostility complaint seriously to protect me." *Id.*

Moreover, Plaintiff's second amended complaint states that on April 16, 2012, a co-worker, Ginger Donahue overheard Corrections Officers Scuderi and LaPointe "plotting 'to get me.'" Dkt. No. 20 at ¶ 14(w). Her deposition, however, indicates that Ms. Donahue informed Plaintiff that she overheard the alleged plot much earlier. *See* Dkt. No. 48-4 at 148-49, 167. Further, both Ginger Donahue and Plaintiff testified in their depositions that this alleged "conspiracy" to get Plaintiff in trouble had nothing to do with her gender. Rather, the false complaint they filed against her related to the fact that they believed that Plaintiff was responsible for getting them into trouble and had otherwise complained about their excessive use of profanity.

10

Additionally, Plaintiff claims that on April 16, 2012, she was informed that she was required to submit to an interrogation the following day at 10:00 a.m. at the Inspector General's Office in Albany. *See* Dkt. No. 20 at ¶ 14(cc). Plaintiff claims that the written notice was sent to her supervisor, Karen LaPort, at the end of March, but she was not notified until April 16, 2012. She claims that she was verbally told that the investigation was about the fact that her office had been "ransacked," but the interrogation instead related to false allegations leveled against her for having a romantic relationship with an inmate and possessing inappropriate drawings from that inmate hanging in her office. *See id.* at ¶¶ 14(x), (cc). When Plaintiff returned to Great Meadow C.F. later that day, she complained to Karen LaPort that she was being set up, to which LaPort responded "'Tracy, I don't think they're trying to get you.'" *Id.* at ¶ 14(y). According to Plaintiff, this dismissive attitude clearly demonstrates that LaPort was not taking her complaints about harassment, hostility, and sexual matters seriously. *See id.* Moreover, Plaintiff contends that, after her meeting with Karen LaPort, when she returned to her office, C.O. LaPointe "and his co-workers" repeatedly called her names including "nigger lover," "whore," and "cunt." *See id.* at ¶ 14(z).

During her deposition, Plaintiff briefly discussed a grievance that she filed in March of 2011, relating to allegations about her having a sexual relationship with an inmate. *See* Dkt. No. 48-4 at 126-129. Plaintiff claims that she had to continually press her union representative to get a hearing on this grievance, which she claims took "almost a year[.]" *Id.* at 129.

What is lacking in all of these allegations is any evidence demonstrating that the alleged hostile work environment was caused because of her sex. Other than general and conclusory statements made during her deposition, nothing in the record supports Plaintiff's claim. While the Court does not doubt that Plaintiff perceived her time at Great Meadow C.F. as a hostile work

11

environment, the perceived hostility was not because of her sex.  Even at her deposition, Plaintiff acknowledged that her problems at Great Meadow C.F. began at a meeting the day after she had met with an inmate who was serving as her assistant at her office.  *See* Dkt. No. 48-4 at 117.  At this meeting, Plaintiff was told that she was no longer permitted to meet with the inmate and Plaintiff claims that she challenged this order and expressed her concerns about this limitation. *See id.* at 118.  Plaintiff believes that it was her challenging this order from the security staff that started her problems.  *See id.* at 118-20.  Indeed, even Ginger Donahue testified that Plaintiff told her that she believed that she was being harassed because of an unspecified complaint she made against them at some point in the past, which she believed to be related to the officers' use of profanity.  *See* Dkt. No. 58-8 at 7; Dkt. No. 58-9 at 17.  Additionally, Ms. Donahue testified that many of the correction officers demonstrate hostility towards the civilian workers and specifically mentioned this hostility as it pertains to the mental health workers.  *See* Dkt. No. 58-9 at 16-17.

As to the profanity, Plaintiff testified that it was not directed at her on a daily or even weekly basis, and referred to it as "sporadic."  Dkt. No. 48-4 at 140.  Further, Plaintiff acknowledged that profanity was regularly used in the prison, but not necessarily directed at her. *See id.* at 138-39, 145.  This sporadic use of profanity, which was only directed at Plaintiff on several occasions during her years at Great Meadow C.F., is insufficient to support her hostile work environment claim.

In conclusion, even if the Court found that the continuing violation doctrine applied to Plaintiff's hostile work environment claim relating to her time at Great Meadow C.F., the undisputed evidence clearly establishes that the alleged hostility was not motivated by considerations made improper by Title VII.  Further, the undisputed evidence identifies only

12

sporadic hostility that is otherwise insufficient to support her claim.  Accordingly, Defendants' motion for summary judgment is granted.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve of copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 22, 2018
       Albany, New York

Mae A. D'Agostino
U.S. District Judge